UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GWEN SAGER,
EXECUTRIX OF THE ESTATE OF
MARILEE SAGER,

          CIVIL ACTION NO.: 3:10-cv-01292-JBA

Plaintiff

v.          DATE: OCTOBER 13, 2010

HARBORSIDE CONNECTICUT LIMITED
PARTNERSHIP, D/B/A ARDEN HOUSE

Defendant

## AMENDED COMPLAINT

1. At all times relevant to this action, the defendant, Harborside Connecticut Limited Partnership (d/b/a Arden House), operated Arden House Care and Rehabilitation Center, in Hamden, Connecticut a chronic and convalescent nursing home licensed by the State of Connecticut which held itself out to the public as a for-profit provider of twenty-four hour skilled nursing care and medical supervision of patients and patients requiring rehabilitation through its members, servants, employees and actual and/or apparent agents.

2. Prior to March 13, 2008, following a fall at home, plaintiff's decedent, Marilee Sager, received care and treatment at the Hospital of Saint Raphael, and was admitted there with dizziness, mild urinary tract infection, chronic low back and abdominal pain, and medication management and was discharged to Arden House on March 13, 2008 for short term rehabilitation.

3. Between March 13, 2008 and April 22, 2008, plaintiff's decedent, Marilee Sager, was a resident at Arden House.

4. Plaintiff's decedent was a brittle diabetic, on a sliding scale of insulin, which required close monitoring of her blood glucose levels and had a history of dehydration, renal insufficiency, and congestive heart failure.

5. On April 1, 2008, while a resident at Arden House, plaintiff's decedent was taken by her daughter for an appointment with her cardiologist, John Chandler, M.D., on which the Arden House "Consultation Sheet", which accompanied plaintiff's decedent to the appointment, recorded her weight as 120 pounds on March 14, 27, and 31, 2008.

6. On April 1, 2008, Dr. Chandler documented his examination of plaintiff's decedent on the "Consultation Sheet" provided to him by Arden House, indicating his plan to adjust the dose of plaintiff's decedent's diuretic medication, Lasix, to 80 mg, twice daily, and his plan for a follow-up evaluation of plaintiff's decedent in one week.

7. On April 3, 2008, a telephone order from Dr. Chandler's office was taken by an Arden House employee, for Lipitor and for Lasix 80 mg, orally, twice daily and that plaintiff's decedent was to be seen by Dr. Chandler in one week.

8. Plaintiff's decedent was unable to attend the scheduled one-week follow-up appointment with Dr. Chandler due to the failure of the Arden House staff to complete the paperwork necessary for said appointment.

9. Plaintiff's decedent remained on Lasix, 80 mg, twice daily from April 3, 2008 through April 17, 2008, at which time Lasix was discontinued.

10. On or about April 7, 2008, plaintiff's decedent was weighed and had lost 14 pounds since her admission weight.

11. On or about April 7, 2008, a certified nurse's aide reported to nursing that plaintiff's decedent fell in her room, resulting in four skin tears, a bump to the left knee and later that day, plaintiff's decedent reported right hand pain.

2

12. On April 10, 2008, plaintiff's decedent required pain medication for complaints of right arm discomfort.

13. On or about April 13, 2008, plaintiff's decedent began experiencing intermittent nausea and vomiting

14. On April 14, 2008, plaintiff's decedent received her monthly examination by a physician who was an actual and/or apparent agent of Arden House, who did not document an assessment of her right arm and wrongly documented that her medications included Lasix, 20 mg, every day and that her weight was stable at 120lbs.

15. By April 17, 2008, plaintiff's decedent had complained of right shoulder pain since her fall on April 7, 2008 and her shoulder was examined by a physician who was an actual and/or apparent agent of Arden House, who ordered an x-ray which identified a moderate dislocation of a previous right shoulder fracture.

16. On or about April 18, 2008, extensive purpura was identified on plaintiff's decedent with a fever of 100.2, hypotension, constipation and nausea for which lab work was ordered.

17. On April 21, 2008, the record indicates that plaintiff's decedent gained 3lbs, of which the physician was made aware and reinitiated the medication Lasix at 40 mg, orally, every day.

18. Plaintiff's decedent remained nauseated with complaints of dry mouth, dizziness, low intake, hypoactive bowel sounds, vomiting, and abdominal discomfort through April 22, 2008 at which time she became lethargic and an abdominal ultrasound identified ascites and bilateral pleural effusion, for which she was transferred to the Hospital of Saint Raphael emergency department for evaluation.

19. At the Hospital of Saint Raphael, plaintiff's decedent, Marilee Sager, was admitted secondary to clinical dehydration, enlarged liver with abnormal liver function studies, acute and chronic renal insufficiency, abnormal clotting studies, and congestive heart failure and she died on April 26, 2008.

20. The care and treatment rendered to plaintiff's decedent, Marilee Sager, by the defendant, Harborside Connecticut Limited Partnership, through its agents, servants, employees and/or actual and/or apparent agents of Arden House, fell below the standard of care, in one or more of the following respects, in that they:

   a. failed to adequately and timely prevent, assess, plan, implement and evaluate the nursing needs and care of a patient with fluid and electrolyte imbalance and known prior risk of dehydration;

   b. failed to adequately and timely develop, implement, evaluate and revise the nursing care plan to effectively reflect the comprehensive needs and standard interventions required to care for plaintiff's decedent;

   c. failed to adequately and appropriately document a detailed baseline nursing assessment of plaintiff's decedent upon her admission to Arden House.

   d. failed to appropriately and accurately evaluate, monitor and document measurable assessments of plaintiff's decedent's lower leg edema;

   e. failed to appropriately and timely document and communicate plaintiff's decedent's accurate hydration status to the physician when hydration goals were and remained unmet;

   f. failed to appropriately report the patient's hypotension, dizziness and continued weight loss to the physician;

   g. failed to appropriately and adequately assess and document plaintiff's decedent's vital signs, neurological signs, complaints of hand pain, the nature and details of her fall, whereby she had sustained multiple skin

   tears, a 14 pound weight loss, and increased confusion on or near April 7, 2010;

h. failed to adequately and timely identify and physically assess plaintiff's decedent's right arm and shoulder after the fall on April 7, 2008, in spite of continuous complaints of right upper extremity pain which resulted in nearly two week delay before it was determined that her shoulder was displaced;

i. failed to appropriately and timely evaluate, change and reassess the nursing care plan to reflect the changing clinical status and nursing care needs of plaintiff's decedent;

j. failed to timely and appropriately inform the physician of plaintiff's decedent's accurate weight loss, ultimately resulting in about a 19 pound weight loss in 30-days;

k. failed to appropriately and timely review plaintiff's decedent's lab work to stay informed of her renal status and timely recognize and intervene in her progressive renal insufficiency;

l. failed to appropriately obtain a physician's order to hold the medication Lasix from plaintiff's decedent on or near April 16, 2010;

m. failed to appropriately identify, assess, intervene in, adequately monitor and report plaintiff's decedent's signs and symptoms of progressive dehydration;

n. failed to adequately and timely investigate the nature and cause of plaintiff's decedent's nausea and vomiting;

5

o. failed to take the necessary measures to ensure that plaintiff's decedent was able to keep her scheduled one-week follow-up appointment with Dr. Chandler;

p. failed to re-schedule an appointment with Dr. Chandler after the missed appointment; and

q. failed to communicate with Dr. Chandler concerning plaintiff's decedent's diuresis and hydration status.

21. As a result of the defendant's negligence, plaintiff's decedent, Marilee Sager, was caused to suffer severe, painful and permanent injuries. She suffered weeks of progressive dehydration, severe weight loss, prolonged nausea, vomiting and abdominal discomfort, progressive lethargy and inadequate nutrition. Additionally, plaintiff's decedent suffered a fall and resultant painful displacement of her right shoulder, which went undiagnosed. As a result of this deterioration, caused by the negligence of the defendant, Marilee Sager died on April 26, 2008.

22. As a further result of said injuries, plaintiff's decedent has incurred expenses for medical
 and hospital treatment, medicines, x-rays and other diagnostic studies, medical apparatus and therapies.
As a result of these injuries Marilee Sager and her estate were obliged to incur expenses for medical, hospital and surgical treatment, medicines, x-rays, other therapies, funeral and burial.

23. As a further result of said injuries, Marilee Sager has suffered a total loss of her ability to carry out and enjoy the activities of daily life and the enjoyment of her family, as well as the loss of the right to die on her own terms.

24. On May 28, 2008, plaintiff's decedent, Gwen Sager, was appointed Executrix of the Estate of Marilee Sager by the Probate Court for the District of Hamden, Connecticut, and is duly qualified as such and continues to act as such.

25. A Petition for Extension of Time of the Statute of Limitations, which is attached, was filed with the Superior Court and granted on April 20, 2010.

**WHEREFORE**, the plaintiff claims money damages.

THE PLAINTIFF
GWEN SAGER, EXECUTRIX
By her attorney

/s/ Bruce D. Jacobs_____
Bruce D. Jacobs
Federal Bar No.ct12191
JACOBS & JACOBS
700 State Street
New Haven, CT   06511
(203) 777-2300 (T)
(203)773-8075 (F)
bjacobs@jacobs-jacobs.com

Dated; October 13, 2010

## CERTIFICATE OF SERVICE

  I hereby certify that, on October 13, 2010, a copy of the foregoing was filed electronically and served by mail upon anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system, or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

               /s/ Bruce D. Jacobs
               Bruce D. Jacobs
               Federal Bar No.ct12191
               JACOBS & JACOBS
               700 State Street
               New Haven, CT   06511
               (203) 777-2300 (T)
               (203)773-8075 (F)
               bjacobs@jacobs-jacobs.com

Dated; October 13, 2010