UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Gwen Sager, Executrix of the Estate of Marilee Sager<br>    *Plaintiff,*<br><br>    v.<br><br>Harborside Connecticut Limited Partnership, d/b/a Arden House,<br>    *Defendant.* | Civil No. 3:10cv1292 (JBA)<br><br><br><br><br>July 7, 2011 |

RULING ON MOTION TO DISMISS

Plaintiff Gwen Sager, the daughter and executrix for the Estate of Marilee Sager (the "decedent"), sued Harborside Connecticut, a New Mexico–incorporated limited partnership that operated Arden House Care and Rehabilitation Center in Hamden, Connecticut, a for–profit chronic and convalescent nursing home licensed by the state of Connecticut. Plaintiff claims that Defendant's negligent care of the decedent, its resident, resulted in her death. Defendant removed this case to federal court claiming diversity jurisdiction and now moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), or alternatively to compel arbitration and stay proceedings. Because Defendant has failed to demonstrate the existence of a properly executed contract that would require arbitration of this claim, Defendant's motion will be denied.

I.   Background[1]

After a fall at her home on March 13, 2008, Marilee Sager, a brittle diabetic who received care and treatment at the Hospital of Saint Raphael, was discharged to Arden House for short–term rehabilitation. She resided at Arden House between March 13, 2008 and April 22, 2008.

On March 18, 2008, Arden House presented Plaintiff with its Admissions Agreement, which had as the last of eleven attachments an arbitration agreement (Long Term Care Arbitration Agreement, Ex. 3–C, the "Arbitration Agreement"). Plaintiff signed the Admissions Agreement and separately signed the Arbitration Agreement on March 21, 2008 as "Resident's Legal Representative" and returned the two documents to Arden House on March 24, 2008.[2]

The Arbitration Agreement provides

> Any and all claims or controversies arising out of or *in any way* relating to this Agreement, the Admission Agreement or any of the Resident's stays at this Facility . . . whether or not related to medical malpractice, including but not limited to disputes regarding the making, execution, validity, enforceability, voidability, unconscionability, severability, scope, interpretation, preemption, waiver, or any other defense to enforceability of

---

[1] In adjudicating a motion under Rule 12(b)(1) for lack of subject–matter jurisdiction, a court may consider material outside the pleadings, including "by affidavit or otherwise." *Kamen v. Am. Tel & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). Reference to outside material, however, should not include "conclusory or hearsay statements contained in the affidavits." *J.S. ex rel N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

[2] Plaintiff also signed and returned to Arden House a form titled Resident Admission Record and Agreement (Ex. 3–D to Mem. Supp.), a "Self–Determination Act," on which Plaintiff noted that the decedent has executed "Durable Power of Attorney" (Ex. 3–E to *id.*), a Medicare Secondary Payer Form, on which Plaintiff noted that she was signing as "P.O.A." (Ex. 3–F to *id.*), and a form appointing a representative for Social Security claims, on which Plaintiff also wrote "P.O.A." (Ex. 3–G to *id.*).

> this Agreement or the Admission Agreement, whether arising out of State or Federal law, whether existing now or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort, or breach of statutory duties . . . regardless of the basis for the duty or of the legal theories upon which the claim is asserted, shall be submitted to binding arbitration

(Ex. C to Mot. Supp. [Doc. # 174] at Attachment K.)  Section 4 of the Arbitration Agreement, provides that "[b]y signing this Agreement, the Parties are giving up and waiving their right to have any Dispute decided in a court of law before a judge and/or jury." Section 8 of the Arbitration Agreement, titled "Voluntary Agreement" further provides that "[i]f you do not accept this Agreement, you will still be allowed to live in, and receive services in, this Facility." (*Id.*)

The following condition is at the top of the signature page of the Arbitration Agreement:

> By signing below, the undersigned parties confirm that each of them has read *all seven (7) pages of this agreement* and understands that each has waived his/her or its rights to a trial, before a judge and/or a jury, and that each of them voluntarily consents to all of the terms of this agreement.

(*Id.* at 7 (emphasis in original).)[3]  The signature page includes lines for the "Resident's" printed name and signature, and Marilee Sager's name is typed on the "Resident" name line. However, the "signature of Resident" line is blank. (*Id.*)  The Arbitration Agreement signature page also includes two signature sections for the legal representative to sign: "Signature of Resident's Legal Representative in his/her Individual Capacity," and "Signature of Resident's Legal Representative in his/her capacity as . . . power of attorney, legal guardian, health care surrogate, or designee/authorized agent of Resident," directing a

---

[3] The Facility Representative Lisa Oppenheimer signed on March 17, 2008.

check–off of the applicable representative capacity. (*Id.*) Plaintiff checked her representative capacity as "power of attorney," but left the signature line blank. The Arbitration Agreement contains a footnote that states "Resident's Legal Representative must sign on *both lines* above containing the phrase 'Resident's Legal Representative.'" (*Id.* (emphasis in original).) It also has a signature line for "a Witness to Resident Designating or Authorizing Legal Representative to sign on Resident's Behalf," to "attest that the Resident, in an alert and oriented state of mind, designated and/or authorized, in the witness's presence, the above named legal representative to sign these agreements on behalf of the Resident." (*Id.*) This witness–signature line is also not signed on the Arbitration Agreement.

In this lawsuit, Plaintiff–executrix claims that Defendant's negligent care of her mother during her in–patient stay resulted in progressive dehydration, severe weight loss, prolonged nausea, vomiting and abdominal pain, progressive lethargy, and inadequate nutrition, and "[a]s a result of this deterioration, caused by the negligence of the defendant, Marilee Sager died on April 26, 2008." (Am. Compl. [Doc. # 20] ¶ 21.) In light of the deficiencies in execution of Arbitration Agreement, Plaintiff refuses to arbitrate this claim, absent court order. (Ex. 5 to Mem. Supp.)

II.     Discussion

Defendant moves to dismiss for lack of subject–matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) on the basis that the parties are bound to arbitrate this dispute, or alternatively, to compel arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, *et seq.* Plaintiff argues that because she did not sign the Arbitration Agreement in a representative capacity, and no witness signed it, there is no agreement between the parties that would compel arbitration.

Preliminarily, Defendant argues that under *Rent–a–Center v. Jackson*, No. 09–497, 561 U.S. __, 130 S. Ct. 2772, 2778 (2010), whether the Arbitration Agreement compels arbitration despite its signature deficiencies is a question for the arbitrators.[4] However, *Rent–a–Center* explicitly addressed only challenges to the *validity* of contracts and arbitration agreements therein, not the "issue [of] whether any agreement between the parties 'was ever concluded.'" *Id.* at 2778, n.2 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 & n.1 (2006) ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded.")). Because the lack of signatures on the Arbitration Agreement implicates the question of whether an "agreement between the parties 'was ever concluded,'" and not the validity of a contract that has entered into force, *Rent–a–Center* is inapposite, and the Court will address whether the parties executed an enforceable Arbitration Agreement.[5]

Plaintiff maintains that the Arbitration Agreement never entered into force because she signed it only in her individual capacity and not in her legal–representative capacity, and it lacked the signature of an attesting witness as explicitly required by the Arbitration Agreement. Defendant argues that despite these omissions Plaintiff nonetheless had implied authority to agree to arbitrate on behalf of the decedent because she had executed other

---

[4] In *Rent–a–Center* the Supreme Court concluded that where the plaintiff challenged the validity of the contract that contained the arbitration agreement as a whole, the question of the arbitration provision's validity was to be determined by the arbitral panel; however, it also held that where a party challenges the validity "of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4."

[5] Even if Plaintiff did challenge the validity of the Arbitration Agreement and not whether it was entered into, *Rent–a–Center* does not mandate that challenge be decided by an arbitral panel, because it is a challenge to the "precise agreement to arbitrate at issue."

documents on which she represented that she was exercising power of attorney on behalf of the decedent. Defendant relies on several cases finding enforceable arbitration agreements executed by individuals acting with implied authority on behalf of residents in hospice care. *See, e.g.*, *Ruesga v. Kindred Nursing Ctrs., LLC,* 161 P. 3d 1253, 1263 (Ariz. Ct. App. 2007) (signature of wife on arbitration agreement on behalf of her incapacitated husband bound them to arbitration, because in medical records spanning seventeen years the wife had executed documents on behalf of her husband, and other documents showed the husband's consent to his wife's control of his care and his insurance matters); *Carraway v. Beverly Enter. Alabama, Inc.*, 978 So. 2d 27, 31 (Ala. 2007) (based on evidence that a decedent approved a legal representative acting on her behalf, that representative's signature on the arbitration agreement was binding); *Broughsville v. OHECC, LLC*, No. 05CA008672, 2005 WL 3483777 (Ohio App. Dec. 21, 2005) (daughter of respite-care resident with mild dementia had apparent authority to bind resident to arbitration of her negligence claim against nursing home, where daughter signed arbitration agreement on her behalf in her presence, resident made no attempt to stop daughter, to ask questions of facility, or to request to read document, and facility knew of relationship between resident and daughter, having provided previous respite care for the resident, and absent indication that resident was incompetent at time of admission or that she was suffering a period of confusion at the time the daughter signed).

However, whether Plaintiff had implied authority as legal representative for the decedent and could properly execute power of attorney is not implicated by Defendant's motion to dismiss. Assuming that Plaintiff executed other agreements as the decedent's legal representative and had durable power of attorney, the undisputed fact remains that Plaintiff

6

did not sign the Arbitration Agreement in that capacity, as the Arbitration Agreement *explicitly* requires: "Resident's Legal Representative must sign on *both lines* above containing the phrase 'Resident's Legal Representative'" (emphasis in original). As Plaintiff's counsel noted during oral argument, where implied authority was sufficient for the other agreements signed by Plaintiff in a representative capacity, this Arbitration Agreement required actual authority, since it was the only agreement that expressly required signatures in two capacities —individual and representative—and required the signature of a witness attesting to the decedent's grant of authority to her representative. Lacking these required formalities, the parties did not properly execute the Arbitration Agreement, and Plaintiff is not required to arbitrate this dispute.

Defendant also argues that because the decedent was a third–party beneficiary of the Arbitration Agreement and received the benefits of that contract, the decedent and estate are equitably estopped from refusing to comply with the Arbitration Agreement. However, by its terms, the Arbitration Agreement was a "voluntary agreement," that provided that even "[i]f you do not accept this Agreement, you will still be allowed to live in, and receive services in, this Facility." In other words, Arden House did not require the decedent or Plaintiff to sign the Arbitration Agreement to receive care, and the care the decedent received was not a benefit of or conditioned on execution of the Arbitration Agreement. (*See* Oppenheimer Aff. at ¶ 14.) Therefore, Plaintiff's claims are not barred by equitable estoppel.

II.   Conclusion

7

Accordingly, Defendant's [Doc. # 16] Motion to Dismiss or in the Alternative to Stay Proceedings and Compel Arbitration is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 7th day of July, 2011.